OPINION OF THE COURT
Per Curiam.
Order entered July 29, 1992 affirmed with $10 costs.
*272 We agree that the terms of the health insurance policy issued by defendant were sufficiently broad to provide coverage for the replacement hairpiece prescribed by plaintiffs treating physician. The policy terms provided coverage for "prosthetic and orthotic appliances which support or replace part or all of a body function or organ or replacement, repair, fitting and adjustment of such devices when prescribed by a practitioner.” A hairpiece of the kind worn by plaintiff is readily encompassed within the policy term "prosthetic appliance”, the word "prosthesis” being defined as "an artificial device to replace a missing part of the body”. (Webster’s Third New International Dictionary 1822.) Indeed, that a hairpiece comes within the definitional term "prosthetic appliance” is confirmed by the defendant’s own internal practice, undisputed on this record, of providing reimbursement on claims involving hairpieces necessitated by baldness resulting from chemotherapy or radiation treatments. Similarly, the average layperson reading defendant’s policy might reasonably conclude that the growth or, more pertinently here, the complete loss of scalp hair was included within the ambit of the broad term "body function”. There is at least an ambiguity in the policy provisions, which under well-settled principles governing interpretation of insurance contracts, must be resolved in favor of the insured and against the insurer (see, Levanant v General Acc. Ins. Co., 79 NY2d 623, 629; Knudsen v Field, 185 AD2d 765). Nor has defendant come forward with evidentiary proof to rebut plaintiffs medical affidavits attesting to the bona fides and emotional sequelae of the medical condition— known as alopecia areata — which has necessitated plaintiffs use of a hairpiece.
Ostrau, P. J., Miller and McCooe, JJ., concur.